CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

OCT 0 3 2011

JULIA C. DUDLEY, CLERK
BY: /s/ K. Dotso
DEPUTY CLERK

# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |
|---|---|
| JOYCE A. CRAUN, | Civil No.: 5:10cv00082 |
| Plaintiff, |  |
| v. | REPORT AND RECOMENDATION |
| MICHAEL ASTRUE, Commissioner of Social Security, |  |
|  | By: Hon. James G. Welsh |
| Defendant, | U. S. Magistrate Judge |

This civil action instituted by the plaintiff, Joyce A. Craun, challenges the final administrative decision of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

In her application and related submissions the plaintiff alleges a March 5, 2007 disability onset date due to bilateral foot, right leg and back pain (R.12,118-120,126,136,140). Her application was denied initially, on reconsideration, and again following an administrative hearing. (R.12-33,34-67,68-74,76-80,85-90,100-112,117). At the hearing the plaintiff was present; she testified, and she was represented by counsel. (R12,34,39-61,81-83,91-94). Robert Jackson testified as a vocational witness. (R.61-66,96-99,114-115). After the ALJ's issuance of

his adverse hearing decision, the plaintiff's requested Appeals Council review.[1] (R.5-9). Her request was denied (R.1-4), and the ALJ's written decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The Commissioner has filed his Answer to the plaintiff's Complaint and has filed a certified copy of the Administrative Record ("R"), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on December 22, 2010 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have filed cross-motions for summary judgment; each has filed a supporting memorandum of points and authorities, and no timely request for oral argument has been made.[2] Accordingly, the following report and recommended disposition is submitted.

On appeal the plaintiff presents two principal arguments. First, she argues that the ALJ erred by failing to give controlling decisional weight to the assessment of her treating pain management physician, and second, she argues that he erred in failing to make a full and adequate assessment of her credibility. In response the Commissioner argues that the ALJ properly considered the entire record, evaluated her testimony and the treating source upon

---

[1] Along with her request for Appeals Council review, the plaintiff submitted a radiology report of a cervical MRI study, dated 10/21/2009, that demonstrated a "prominent disc ridge complex" at c5/6 and a "central disc herniation" at c6/7. (R.8). In its Notice and Order denying the plaintiff's request for review, the Appeals Council acknowledged its consideration of this evidence and its conclusion that it "d[id] not provide a basis" for changing the ALJ's decision. (R.1-2,4).

[2] WDVa Gen. R. 4(c)(2) directs that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

2

which the plaintiff relies, took note of her vocational profile[3] and obesity (5' 3"; 185 lbs.) and concluded that, notwithstanding her back impairment, attendant pain and obesity, she retained the functional ability to perform a reduced range of light[4] to sedentary work[5] with a sit/stand option.[6]

I. Summary Recommendation

Based on a thorough review of the administrative record and for the reasons outlined hereinafter, both of the plaintiff's principal contentions have merit, and the non-disability finding of the Commissioner is not supported by substantial evidence. It is, therefore, recommended that the plaintiff's motion for summary judgment be granted, the Commissioner's motion for summary judgment be denied, and the case remanded for the calculation and payment of benefits.

---

[3] The plaintiff has a high school education, and at the time of her alleged disability onset, she was forty-one years of age. (R.12,40,63). At this age the plaintiff is classified as a "younger person" and pursuant to the agency's regulations, and age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c).

[4] "**Light work**" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time it generally involves some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10, 1.

[5] "**Sedentary work**" is defined in 20 C.F.R. § 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[6] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985).

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4$^{th}$Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4$^{th}$Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$640, 642 (4$^{th}$Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater*, 76 F.3$^d$at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$396, 397 (4$^{th}$Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F.3$^d$203, 208 (4$^{th}$Cir. 2000); 42 U.S.C. § 405(g).

## III. Facts

4

The plaintiff's medical record in this case documents her long history of chronic low back pain and lumbosacral disc disease that first developed following a fall in 2001. (R.324,373,417). She subsequently underwent two separate back surgeries. (*Id.*) The first, an anterior lumbar interbody fusion at L5/S1 was performed in 2003; it was reasonably successful, and she experienced significant symptomatic relief for several years. (*Id.*) In early 2007, however, she again began to experience significant constant low back pain with an attendant intermittent right leg radiculopathy. (R.211,213,324-325). An MRI on April 6, 2007 disclosed erosion of the interdiscal orthopedic cage installed as part of the 2003 fusion and laminectomy. (R.329). When medication, physical therapy and even epidural steroid injections failed to relieve her symptoms, in November 2007 the plaintiff underwent a second L5/S1 fusion. (R.250,262-263,266,285-290,293-306,307-315,320-325,351-352,358-360). Initially she made good progress with physical therapy, and she was discharged on the third post-operative day. (R.293). Although she still exhibited some soreness and mild swelling in her back and had a markedly limited range of dorsolumbar spine motion, on November 20 the plaintiff was advised by her surgeon, Matthew Pollard, M.D., that she could "slowly advance her activities as tolerated." (R.293,316-317; *see also* R.307).

After being "lost to follow-up" for six months, the plaintiff next saw the plaintiff in May 2008. (R.366). At the time she reported experiencing ongoing low back pain and numbness in her right thigh, and she was continuing to use Ultram, Lodine, and Elavil for pain. (*Id.*). Dr. Pollard recommended additional physical therapy, and released her for work activity requiring no standing longer than thirty minutes, no lifting more than thirty pounds and no repetitive lifting or bending. (*Id.*). When she saw Dr. Pollard the following month, she reported that physical

5

therapy had helped only "a little."(R.365; *see also* R.351-360). He described her low back pain as a "chronic" condition with a "persistent" right lower extremity radiculopathy, and he advised her that she would just have to "live with pain to some extent."(*Id.*). Nevertheless, he released her to return as needed and without noting any restrictions.

During the remainder of 2008 the plaintiff's medical records show that she continued to report experiencing significant chronic low back and right hip pain; additionally they show her development of degenerative right sacroiliac disc disease and her having sustained significant loss of bone density. (R.389-390,394-405). In September she told her primary care provider that her right hip pain was radiating throughout her entire right lower extremity and that her pain was "severe." (R.394). When she saw Dr. Pollard in November, she similarly reported that her condition was stable and that she continued to have considerable low pain with an attendant right lower extremity radiculopathy. (R.362). On that occasion Dr. Pollard gave her prescriptions for Motrin and Darvocet, and he advised her to keep her upcoming pain clinic appointment with Darlinda Grice, M.D. (*Id.*).

As part of Dr. Grice's initial examination on December 2, 2008, she found the plaintiff to exhibit no pain exaggeration behaviors, to have a significantly restricted range of low back motion, diminished reflexes in both lower extremities, diffuse tenderness across the low back and hip girdle, difficulty transferring from standing to sitting and *vice versa*, and to exhibit a flat affect. (R.373-375). Pursuant to Dr. Grice's recommendation, the plaintiff agreed to begin the screening process for methadone therapy as an analgesic medication regime to treat her chronic

6

pain. (R.375). Due to adverse side effects, in January 2009 Dr. Grice discontinued the use of methadone and substituted morphine; she recommended "gentle exercise," and she placed restrictions on the plaintiff's lifting, postural and physical activities. (R.370-371).

Despite continued medication therapy and an extended physical therapy effort between March and May 2009, the plaintiff continued to report significant loss of function due to low back and leg pain and numbness. (R.412-414,417-488,495,497-503). In her June 25, 2009 statement outlining the plaintiff's functional capacities and limitations, Dr. Grice stated that she should never lift more than twenty-five pounds; rarely lift more than ten pounds; stand, walk or sit for no longer than fifteen to thirty minutes without interruption and to do so for no more than a total of two hours during an eight-hour day. (R.498-502). Additionally, in connection with any work effort, Dr. Gricenoted that the plaintiff should never climb ladders, only occasionally climb stairs, and rarely perform any postural activities (bending, stooping, etc.). (*Id.*).

IV.     Analysis

It is undisputed in this case that despite two back surgeries, the plaintiff continues to have a severe back impairment with attendant pain and lower extremity radiculopathy. (R.25). Moreover, as the ALJ also noted in his decision, it is undisputed that "this is principally a pain case." (R.26).Given her well-documented pain-producing impairment and the undisputed nexus between the impairment and her allegations of pain, the plaintiff cogently argues that the explicit confirmation of her pain condition's severity by her treating pain management specialist demonstrates her "disability" within the meaning of the Act. In contrast, the Commissioner

7

argues in his brief that the ALJ properly discounted both the plaintiff's pain testimony and the assessment of Dr. Grice and properly determined, given her vocational profile, that she retained the residual functional capacity to adjust to a limited range of sedentary work. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

*Inter alia,* in his evaluation of her claim, the ALJ acknowledged that the plaintiff's back condition and her obesity[7] were *severe* conditions within the meaning of the agency's regulations, and he found that these conditions limited her to work at a "light to sedentary" exertional level, which allowed her the sit or stand option, involved standing no longer than thirty minutes at a time, required no repetitive bending, and only occasional other postural movements. (R.24).

As both parties argue, integral to this residual functional capacity assessment by the ALJ was his rejection of the plaintiff's statements concerning the severity of her limitations in combination with the ALJ's decision to give "little weight" to Dr. Grice's medical opinion. Therefore, if these conclusions are supported by substantial evidence, the final administrative decision must be affirmed. If not, the plaintiff's claim is supported by substantial evidence, and she has demonstrated her entitlement to benefits under Title II of the Act.

A.

---

[7] SSR 02-1p provides that obesity is a factor to be considered by the ALJ in determining whether a claimant's impairments are severe, whether those impairments meet or equal a listing, and in assessing a claimant's residual functional capacity. (*See* R.23-24)

8

As previously noted, the plaintiff's primary assignment of error is the ALJ's refusal to give significant decisional weight to Dr. Grice's functional assessment. On review that refusal was clearly erroneous. He rejected her professional opinion principally on the basis of what he perceived by him to be "advocacy" on behalf of the plaintiff. Unquestionably, that opinion by the ALJ is no more than his conclusory assertion, and one he made without suggesting some exceptional factual basis in the record. As such, it is simply not a cognizable reason to reject a professional medical opinion rendered a treating specialist. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician).

Equally demonstrative of the ALJ's error in rejecting Dr. Grice's assessment is his separate conclusory assertion that plaintiff had received only "conservative" treatment since her second spinal fusion in November 2007. In contrast to this assertion, the medical record documents both Dr. Pollard's referral of the plaintiff for specialized chronic pain management, when he concluded there was "nothing more [he could] offer, and it is equally inconsistent with Dr. Grice's aggressive pain control efforts. Although Dr. Pollard attempted post-operatively to treat the plaintiff's persistent pain with extended physical therapy, home exercise, and a number of alternative prescription medicationswidely used for the treatment of moderateto severe pain, these efforts were unsuccessful. (R.317,351-360,362-366). As his office records show, by June 2008 Dr. Pollard had concluded the plaintiff would likely need specialized pain management, and by November he concluded that there was "nothing more [he could] offer." (R.362,365). Although his treatment regime can be fairly characterized as a "conservative" approach to pain management, Dr. Grice initiated a much more aggressive treatment regime based initially on the

9

use of methadone and later morphine. (R370-371,375). These are, without question, strong opioid/opiate analgesic medications which are consistent with the plaintiff's severe pain complaints and are anything but a continuation of a "conservative" treatment regime. *See generally Schmidt v. Shalala*, 1993 U.S. App. LEXIS 31610, *17 (7th Cir. Nov. 30, 1993); *Nolan v. Astrue,* 2011 U.S. Dist. LEXIS 92532, *5-6 (WDPa, Aug. 18,2011).

Other rationales offered by the ALJ to reject Dr. Grice's professional assessment of the plaintiff's condition are equally unsupported. For example, given as another justification for his discount of Dr. Grice's assessment, the ALJ erroneously asserted that Dr. Grice had not reviewed any of the plaintiff's medical records, when in fact her initial examination note dated December 2, 2008, specifically records her "review of the medical records." (R.373). Similarly, the ALJ rejected Dr. Grice's detailed pre-hearing assessment for the alleged reason that it contained "inconsistencies" with her previous assessments, when her treatment notes in fact record her evolving assessment over the course of her treatment and not any inconsistency in the entire context of this case.[8]

---

[8] When Dr. Grice initially evaluated the plaintiff's pain condition on 12/02/2008, she made no functional assessment and simply identified the ability of the plaintiff "perhaps even returning to work at some point in the future" as a treatment goal. (R.375). After an initial sixty-day methadone treatment regime for the plaintiff's lumbar radicular pain, Dr. Grice suggested she begin a program of "[g]entle exercise" with no lifting over 25 lbs., "no prolonged positioning," no physical activities involving repeated bending, stooping, etc., and an ability to sit, stand or lie down as needed "for comfort." (R.371). Noting *inter alia* the plaintiff's ongoing positioning difficulties, " analgesic gait" on ambulation and positive straight leg raise results at the time of a 04/23/09 clinical examination, Dr. Grice reiterated her advice that the plaintiff avoid any prolonged sitting or standing and any excessive lifting. (R.413-414). Consistent with these activity limitations and her documented clinical findings, in her more detailed 06/25/2009 assessment Dr. Grice outlined the plaintiff's disability within the meaning of the Act due to her significant lifting, standing, walking, sitting, reaching, and postural limitations directly caused by her chronic lumbar radicular pain.

10

Central to any consideration of a treating physician's opinion in a disability eligibility, determination must be a recognition that his or her opinion[9] "is usually entitled to 'controlling weight,'" and should be discounted only if it is not supported by clinical evidence or is inconsistent with other substantial evidence in the record. *Mortensen v. Astrue*, 165 Soc. Sec. Rep. Service 1, 4 (4th Cir. 2011) (citing 20 C.F.R § 404.1527(d)(2) and *Mastro v. Apfel*, 270 F.3<sup>d</sup>171, 178 (4<sup>th</sup>Cir. 2001)). Dr. Grice's professional assessment in this case is supported by the clinical evidence. A careful review of the record fails to contain either any substantial or persuasive evidence to undercut her expert judgment, and the ALJ erred by failing to accord controlling weight to her functional assessment.

**B.**

The plaintiff also argues that this error by the ALJ in failing to give controlling weight to Dr. Grice's professional assessment was compounded by his failure to find her testimony regarding the severity of limitations not to be fully credible. (*See* R.26). In doing so, the ALJ first and foremost ignored completely Dr. Grice's unequivocal contrary clinical findings. She expressly noted that the plaintiff "exhibited no pain exaggeration behaviors," was "[n]ot significantly demonstrative" and "appeared stoic." (R.374).

"The ALJ must make a credibility determination based upon all the evidence in the record." *Kemp v. Astrue*, 2011 U.S. Dist. LEXIS 107497, *26 (DSC. Sep. 22, 2011). Given these specific clinical findings by Dr. Grice, findings which bear directly on any credibility

---

[9] A "medical opinion," is a "judgment about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

11

determination, and given the absence of anything in the record suggesting malingering on the part of the plaintiff, the failure of the ALJ to articulate specific and adequate reasons either to reject or discount the plaintiff's testimony is obvious error. *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Fisher v. Barnhart*, 181 Fed. Appx. 359, *10 (4th Cir. 2006) (if the ALJ decides to reject oral testimony, "[he] must give 'specific reasons' that are grounded in the evidence").

In an effort to meet this decisional obligation, the ALJ made specific note of the fact that the plaintiff had been able to sit for more than an hour during the hearing. However, in assessing the plaintiff's testimony concerning the intensity and persistence of her symptoms and their affect on her ability to work, such an observation is neither credible nor sufficient to sustain the ALJ's finding. *See Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990) (it is error for the ALJ to engage in "sit and squirm jurisprudence" based on his personal observations of the claimant at the hearing.); accord *Lewis v. Bowen*, 823 F.2d 813, 816 (4th Cir. 1987).

Additionally, there is nothing in the record to suggest that the plaintiff has exhibited any exaggerated pain behavior or other behavior which might serve as an objective basis to discredit her testimony concerning the nature and extent of her lumbar and associated radicular pain. *See Harris v. Barnhart*, 2006 U.S. Dist. LEXIS 33026, *18-19 (WDVa. May 25, 2006) (ALJ's discount of the claimant's testimony reasonably based on her exaggerated pain behaviors).

12

In effect, therefore, the ALJ's determination that the plaintiff's pain-related testimony was "not entirely credible" is solely based on a few discrete entries in a 311-page, multi-year medical record. For example, he points-out that the plaintiff's functional abilities improved after two months of physical therapy in June and July 2008; however, the record also shows that she continued to report a significant level of intermittent pain. (R.351). Similarly, the ALJ took note of Dr. Pollard's suggestion that the plaintiff find a physically less demanding job; however, that suggestion was made well before her second surgery was scheduled for November 2007. Likewise, the ALJ took note of Dr. Pollard's June 26, 2008 decision not to place any further restrictions on the plaintiff's activities; however, Dr. Pollard also noted on the same day that physical therapy had helped only "a little," that her "pain . . . [had] persist[ed] despite surgery and conservative care," and that she "perhaps would benefit from chronic pain management or even spinal cord stimulation." (R.365).

While the ALJ may properly assess credibility on the basis of the medical record, he is not empowered selectively to discredit testimony in order to justify a denial of benefits. *Womack v. Astrue*, 2010 U.S. Dist. LEXIS 123700, *22 (EDVa. Oct. 20, 2010) ("The ALJ was required to consider the entire record, not just selective portions."). In this case none of these ostensible reasons given by the ALJ to justify his refusal to credit the plaintiff's testimony really focuses of the issue of her persistent chronic pain. In essence the ALJ has erroneously chosen to "cherry-pick" from the record to support the conclusion he wanted to reach, while ignoring the entirety of the plaintiff's testimony and the evidence in the record. *Hines v. Barnhart*, 453 F.3$^d$ 559, 566 (4th Cir. 2006) (citing *Diaz v. Chater*, 55 F.3$^d$ 300, 307 (7th Cir. 1995)("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion . . . .")).

13

## V. Proposed Findings

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The ALJ erred because he improperly considered Plaintiff's credibility and engaged in selective citation when doing so;

3. The ALJ erred in failing to give controlling weight to the professional opinions and functional assessment of Dr. Grice;

4. No additional fact-finding is necessary in order to establish a disability onset date;

5. Reversal and remand simply for the calculation and award of benefits is appropriate in this case; and

6. Plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; **provided, however, any such extension of time would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING JUDGMENT to the plaintiff, REMANDING this case with directions to award Plaintiff the benefits to which she is entitled from March 5, 2007, and this case be STRICKEN from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 3rd day of October 2011.

/s/ *James G. Welsh*
United States Magistrate Judge