IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOYCE A. CRAUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:10cv082 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on October 3, 2011. In that Report and Recommendation, the magistrate judge recommended that the Commissioner's decision, finding plaintiff Joyce Craun ("Craun") not to be disabled, be reversed and the case remanded with directions to the Commissioner to award disability benefits. For the reasons stated herein, the court believes that the magistrate judge's recommendation that benefits be paid to Craun is not consistent with the entirety of Craun's medical record, particularly the opinion of Craun's treating orthopedic surgeon. As such, the court believes that the appropriate course is to remand the case back to the Commissioner for further factual development designed to provide greater clarity as to the functional limitations posed by Craun's back pain.

**I.**

This matter was referred to the magistrate judge for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) on December 22, 2010. The parties filed cross motions for summary judgment and supporting memoranda and the

magistrate judge issued his Report and Recommendation on October 3, 2011.  Under 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  Federal Rule of Civil Procedure 72(b) provides the parties with an opportunity to file written objections to the proposed findings and recommendations, but neither party filed objections in this case.  Rule 72(b)(3) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  While the text of the rule is silent as to the obligation of the court if no objection is made, the advisory committee notes that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Advisory Committee Notes to Fed. R. Civ. P. 72 (citing Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)).  In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court had occasion to address the issue, and stated as follows:

> The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment.  Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

474 U.S. at 154.  Thus, even absent an objection, the court retains the ability to review sua sponte a magistrate judge's report and recommendation.  The court believes that the particular facts of this case present an appropriate occasion to review the magistrate judge's Report and Recommendation notwithstanding the absence of an objection.

## II.

This social security disability appeal presents a tale of two treating physicians.  On the one hand, the medical records and treatment notes of Craun's treating orthopedic surgeon, Dr.
2

Matthew Pollard, who performed back surgery on Craun in 2007, reflect his view that she should seek out some employment as he "placed no restrictions on her activity." Administrative Record ("R.") at 365. On the other hand, after Craun stopped seeing Dr. Pollard, she began treating with Dr. Darlinda M. Grice, a pain management physician, who noted in Craun's first visit that she "is unable to work at this point." (R. 375.)

In his exhaustive decision, the Administrative Law Judge ("ALJ") relies heavily on the views of the state agency physicians and Dr. Pollard that Craun was not totally disabled and gives little weight to the opinion of Dr. Grice. Based principally on the medical records of Craun's treating surgeon and the assessments of the state agency physicians, the ALJ concluded that Craun was capable of engaging in a range of light to sedentary work.[1]

Taking the obverse position, the magistrate judge in his Report and Recommendation focuses almost exclusively on the opinion of Dr. Grice and pays relatively little attention to the observations and assessments found in Dr. Pollard's medical records.

It is not the province of a federal court to make administrative disability decisions. The court's job is to determine whether substantial evidence supports the Commissioner's disability decision. To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial

---

[1] As noted in the ALJ's decision, the state agency physicians determined that Craun retained the residual functional capacity to perform a range of light work. Dr. Pollard's assessment placed Craun in the sedentary work range. (R. 27 n.12.) This difference is of no moment as the Vocational Expert ("VE") testified that there were jobs in the national economy that an individual with Craun's age, education, work experience and residual functional capacity could perform at both the light and sedentary levels.

3

when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

### III.

In his detailed decision, the ALJ addresses Craun's medical history and concludes by adopting the assessments of the state agency physicians and Craun's treating orthopedic surgeon, Dr. Matthew Pollard. It appears from the record that Craun had lumbar fusion surgery in 2003. The first indication in the record of subsequent problems with her back is on March 6, 2007, when she appeared in the Rockingham Memorial Hospital emergency room in Harrisonburg, Virginia, complaining of chronic low back pain with acute sciatica. She was prescribed prednisone and Vicodin and referred to an orthopedic group. (R. 211.) Two weeks later, on March 19, 2007, Craun presented at the emergency room of the Augusta Medical Center in Fishersville, Virginia, with the same complaint. Craun was prescribed additional medications and instructed to follow up with Dr. Pollard. The emergency room record reflects that Craun was working in the shipping department of a factory at the time. (R. 315.)

Dr. Pollard treated Craun for over a year and a half between April 3, 2007 and November 18, 2008. During that period, he saw Craun ten times in his office and performed back surgery on her on November 2, 2007.

Dr. Pollard performed a comprehensive orthopedic examination on Craun during her first visit with him on April 3, 2007. At that time, Craun told Dr. Pollard that she had suffered from

4

back pain since 2001, which improved substantially after surgery in 2003. Craun indicated that her back pain has worsened in the past two months, and that she had intermittent radiation of pain into her upper back and right lower extremity. She indicated that she was not working. On physical examination, Dr. Pollard observed that Craun walked normally and without difficulty. No problems were noted with her lower extremities. As to her spine, Dr. Pollard noted no lesions or deformities. Dr. Pollard's examination note describes Craun as having normal range of motion "but pain is reproduced at the extremes of motion. Tenderness is noted in the lower lumbar segments. Straight leg testing is negative on the right and left." (R. 325.) Dr. Pollard ordered some imaging tests and started Craun on a regimen of physical therapy.

When Dr. Pollard examined Craun's imaging results, he stated that "I can not say that fusion has occurred." (R. 323.) He began to talk with Craun about her options, including conservative treatment, living with the pain, pain management treatment, and surgery. These discussions were continued over the next several visits. (R. 321-23.) Ultimately, Craun elected to have surgery, and a lumbar fusion procedure was performed on November 2, 2007. Craun was seen in follow up a few weeks later, and examination revealed that the incision was healed without infection and the hardware was placed appropriately. (R. 317.) Subsequently, Craun was "lost to follow-up, until [Dr. Pollard] stopped filling out disability papers for her after she failed to follow-up." (R. 366.)

Craun was next seen by Dr. Pollard on May 7, 2008, at which time she complained of low back pain and numbness in the right thigh. She reported that overall she did not feel that the surgery helped her. (R. 366.) Under the "PLAN" segment of Dr. Pollard's note, he wrote:

> Chronic low back pain. I have suggested PT, but she does not want to try this. She may continue her current medications, or change to OTC analgesics. I have given her some work restrictions that she agrees with and I think are reasonable. No

5

>     standing >30 minutes, no lifting >30 pounds, no repetitive bending
>     or lifting. She will follow-up here in 6 months. At that time my
>     inclination would be to lift all restrictions on her activity, and she
>     will have to live with any pain that remains.

(R. 366.)

On May 8, 2008, Dr. Pollard completed an Attending Physician Statement for Unum, presumably for private disability insurance purposes. (R. 368-69.) This statement indicates that Dr. Pollard advised Craun to return to work full time with certain restrictions. Dr. Pollard indicated that Craun could sit, stand and walk intermittently for six hours, could lift up to twenty pounds frequently, could reach above shoulder level frequently and could climb, twist/bend/stoop, and operate heavy machinery occasionally. Dr. Pollard indicated that Craun could continuously perform fine finger movements, hand/eye coordinated movements and pushing/pulling. The form indicates that Dr. Pollard expected improvement in Craun's capabilities in five months. (R. 369.)

Dr. Pollard saw Craun again on June 26, 2008 and November 18, 2008. She continued to complain of low back pain radiating to her right leg on each occasion. On June 28, 2008, Dr. Pollard assessed Craun as follows:

> Chronic lower back with pseudo-radicular right lower extremity pain that persists despite surgery and conservative care. I have placed no restrictions on her activity. She understands that she will have to live with pain to some extent. She may follow-up here as needed. At her request I have referred her to the pain center. Perhaps she would benefit from chronic pain management, or even a spinal cord stimulation.

(R. 365.) In her final visit to Dr. Pollard, Craun again declined interest in physical therapy or an injection. Dr. Pollard noted her upcoming appointment with the pain center and stated that there was nothing more he could offer her. (R. 362.)

In sum, the medical records of the treating physician with the most significant contact with Craun indicate that while she will likely to have to live with some back pain, she is not totally disabled and should seek some employment.

## IV.

In contrast, the Report and Recommendation of the magistrate judge focuses principally on the ALJ's consideration of the disability opinion of Darlinda Grice, M.D., the pain management physician Craun saw after she was released by Dr. Pollard. The medical record created at the time of Craun's first visit to Dr. Grice reflects her conclusion that Craun was unable to work. (R. 375.) Plaintiff told Dr. Grice of her two back surgeries and the fact that she feels "somewhat worse since the surgery in terms of her radicular leg pain and back pain." (R. 373.) As to her ability to work, Craun reported:

> She has been unable to work because of the back and radicular leg pain but remains independent with her ADLs. She has no other serious medical problems that she is aware of. Her goals are to have the edge taken off the pain at least so she can be more functional at home. She is unsure if she would ever tolerate going back to work because she has very poor sitting tolerance, very poor standing tolerance. She cannot walk far, and she is incredibly stiff.

(R. 373.) On physical examination, Dr. Grice noted diffuse myofascial tenderness across the low back, significantly limited lumbar range of motion, a stiff low back and difficulty transitioning between sitting and standing. (R. 374.) Dr. Grice categorized Craun's condition as follows:

> Lumbar failed back surgery syndrome. (722.83). This is her second major spine surgery. It has been about a year since the surgery. I would estimate that she is at maximum medical improvement with regards to the healing process. She is unable to work at this point and is encouraged to accomplish her own ADLs within the limits of her pain.

7

(R. 375.) As was the case when presented with options by Dr. Pollard, Craun declined Dr. Grice's mention of further physical therapy or injections. Dr. Grice suggested treatment with methadone, and her notes reflect the following:

> We had a long discussion at today's visit about the nature of chronic pain, the option to treat the pain with chronic narcotics, the risks that that poses, and the possible benefits of managing the pain so that she becomes more independent and is able to participate more fully in her family's activities, perhaps even returning to work at some point in the future.

(R. 375.)

Craun reported in her next visit that methadone made her feel "drunk" and wanted to discontinue it. As a result, she was switched to morphine on January 27, 2009. (R. 370-71.) Dr. Grice's note from that day summarized her status as follows:

> 4. Lumbar degenerative disk disease (722.52). Treatment as above. Gentle exercise discussed. Once again, no lifting anything greater than 25 pounds. No repeated stooping, bending, twisting, or prolonged positioning. Sit, stand, lie down p.r.n. for comfort. We will see her back in about 1 month to see how she is doing on the morphine. She will call us if she has any questions or difficulties with the morphine and if she does tolerate it well, she will need to bring the methadone in for witnessed destruction.

(R. 371.)

The last medical note in the record is from Craun's visit to Dr. Grice on April 23, 2009, at which time she reported that she was responding about 40% to the intermittent morphine treatment. (R. 413.) Dr. Grice's note reported that "[s]he is encouraged to maintain an ideal body weight, avoid excessive lifting, prolonged positioning. Will see her back at least quarterly, certainly sooner p.r.n." (R. 414.)

On June 25, 2009, Dr. Grice completed a Medical Assessment of Ability To Do Work-Related Activities (Physical). This assessment contrasts rather starkly from that done by Dr.

8

Pollard in that Dr. Grice indicates that Craun can stand/walk or sit less than two hours a day and could not stand or walk for more than 15-30 minutes without interruption. (R. 498-99.) Dr. Grice's handwritten notes indicate that Craun's spine was very stiff with radicular pain. (R. 498.) Dr. Grice noted that she could never climb a ladder and could climb stairs only occasionally. She would have difficulty balancing and could only rarely stoop, crouch, kneel or crawl. Dr. Grice noted that she was limited in reaching because her back cannot arch. She concluded that Craun was totally disabled from any work activity, stating that "[s]he's had a terrible outcome from 2 back surgeries. Barely makes it with ADLs. Needs morphine and lyrica just to do that." (R. 502.)

The ALJ viewed Dr. Grice's disability assessment with some skepticism, noting that Dr. Grice found Craun to be totally disabled on the first visit and without any review of her prior records, including imagery. (R. 27.) The ALJ concluded as follows:

> It is clear that Dr. Grice adopted an advocacy role on behalf of the claimant right from the beginning without addressing why her opinion differed from the claimant's back surgeon Dr. Pollard's opinion that claimant was capable of some work. Almost 2 months later at the end of January 2009, Dr. Grice restricted the claimant to no lifting anything greater than 25 pounds, no repeated stooping, bending, twisting, or prolonged positioning. In April 2009, Dr. Grice indicated that the claimant should avoid excessive lifting and prolonged positioning. Dr. Grice's January and April 2009 opinions are similar to Dr. Pollard's interim restrictions in May 2008, which according to the vocational expert would still permit the claimant to do sedentary work. However, Dr. Grice has not attempted to reconcile the inconsistencies in all of her assessments. Therefore, the undersigned rejects Dr. Grice's contradictory opinions that the claimant is unable to do even sedentary work because that is an opinion on an issue of disability reserved to the Commissioner of Social Security pursuant to 20 CFR 404.1527(e) and SSR 96-5p, and it is not supported by the longitudinal record with its generally routine and conservative treatment since the claimant's second back surgery, including her own treatment notes, as well as the opinion of claimant's treating orthopedic specialist,

9

> Dr. Pollard, who has said that the claimant can work.
> Consequently, little weight is given to the opinions of Dr. Grice.

(R. 27 (internal record citations omitted).)

In his Report and Recommendation, the magistrate judge took issue with the ALJ's "refusal to give significant decisional weight to Dr. Grice's functional assessment. On review that refusal was clearly erroneous." Report and Recommendation, Dkt. # 16, at 9. The magistrate judge found fault with the ALJ's reference to Dr. Grice's disability opinion as representing patient "advocacy" and disputed the ALJ's characterization of Craun's treatment following her 2007 surgery as "conservative." The magistrate judge disagreed with the ALJ's criticism of Dr. Grice's initial disability opinion as lacking any foundation in a review of Craun's medical records, noting that Dr. Grice's initial treatment note makes reference to a "review of the medical records." (R. 373.)

While certain of the magistrate judge's criticism with regard to the ALJ's decision to accord little weight to the opinion of Dr. Grice is well-taken, the problem with the conclusion in the Report and Recommendation that the case be reversed and benefits awarded is that it focuses almost exclusively on the opinion of Dr. Grice and does not appropriately factor in the contrary treating physician opinion of Dr. Pollard. Just as the ALJ's decision may be faulted for summarily dismissing Dr. Grice's medical opinion in favor of that of Dr. Pollard, the Report and Recommendation is subject to the same criticism in the other direction.

V.

Taking a step back from the details of the dueling medical opinions in this case, a few things are clear. First, Craun has suffered from low back pain for roughly a decade. Neither of her treating physicians suggests that she does not have the low back pain she describes. She has undergone two back surgeries which have not resolved her pain. Nevertheless, her treating

10

Case 5:10-cv-00082-MFU-JGW   Document 20   Filed 02/24/12   Page 10 of 12   Pageid#: 592

physicians disagree as to whether she is capable of sedentary work. Relying on Craun's treating orthopedic surgeon, the ALJ concludes that Craun can do some work. The magistrate judge, relying on Craun's treating pain management doctor, concludes just the opposite.

On this record, the court does not believe that the Report and Recommendation recommending reversal of the decision of the Commissioner with directions to pay benefits from March 5, 2007 is appropriate. The court cannot reconcile the recommended award of benefits with the assessment reflected in the notes of treating orthopedic surgeon Dr. Pollard that Craun can perform sedentary work. Likewise, it is difficult for a reviewing court to conclude that Craun can work given the long-term nature of her back pain, her two apparently unsuccessful surgeries and the opinion of treating pain management physician Dr. Grice.

Craun is a relatively young woman, now in her early 40s. The decision to grant or deny disability benefits will impact her life for a significant period of time. As such, it is prudent to make such an important decision with a complete record. Accordingly, the court believes that this case ought to be returned to the Commissioner for further evidentiary development. In particular, the Commissioner should recontact Dr. Pollard and obtain a written assessment from him as to Craun's ability to work. Such an assessment is likely to provide a clearer picture of Dr. Pollard's opinion than may be gleaned from parsing his medical notes. Second, the Commissioner should obtain a consultative examination of Craun by an orthopedic surgeon specializing in low back injuries, and provide that examining surgeon with the medical records of both Drs. Pollard and Grice so that a comprehensive disability evaluation can be rendered.

To that end, an Order will be entered accepting in part and rejecting in part the Report and Recommendation of the magistrate judge. The Order will reverse the decision of the Commissioner and remand this case for further evidentiary development as set forth herein.

Entered: February 24, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge